**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **QUINDALE ADDISON** | * | **CIVIL ACTION** |
| **VERSUS** | * | **NO: 06-7395** |
| **MR. WILKINSON, WARDEN** | * | **SECTION: "B"(6)** |

## SUPPLEMENTAL REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit of proposed findings and recommendations for disposition pursuant to Title 28, United States Code, Sections 636(b)(1)(B) and (C), and, as applicable, Rule 8(b) of the Rules Governing Section 2254 cases. Upon review of the entire record, the court has determined that a federal evidentiary hearing is unnecessary. See Title 28, United States Code, Section 2254(e)(2).[1] For the

---

[1] Under Title 28, United States Code, Section 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, Title 28, United States Code, Section 2254(e)(2)(A)(1), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, Title 28, United States Code, Section 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. Title 28, United States Code, Section 2254(e)(2)(B).

following reasons, it is recommended that the subject petition for habeas corpus relief be **DENIED WITH PREJUDICE**.

On September 18, 2009, this Magistrate Judge issued a Report and Recommendation (Rec. Doc. #14) reporting that the subject petition contained both exhausted and unexhausted claims. I recommended that the petition be dismissed without prejudice for failure to exhaust all issues. I further recommended that this matter be stayed and that petitioner Quindale Addison be allowed to re-open these proceedings after he had exhausted his state courts remedies. The district court adopted the Report and Recommendation and issued the appropriate Order. (Rec. Doc. 15.) Petitioner filed a motion to re-open the case on November 6, 2009. (Rec. Doc. 18.)

On January 15, 2010, the district court referred Addison's Motion to Re-Open the Case to this Magistrate Judge for findings and recommendations. (Rec. Doc. 19.) On March 3, 2010, I reported that Addison had decided to abandon his unexhausted claims (4-8) and that he requested the court only address claims 1-3, which the state conceded were exhausted. Therefore, I recommended that the motion to re-open the case be granted and further recommended that this District Court lift its stay order.

The district court adopted the Report and Recommendation, and issued an Order lifting the stay and recommitted the case to this Magistrate Judge for issuance of a Supplemental Report and Recommendation. (Rec. Doc. 21.)

## Procedural Background

Petitioner, Quindale Addison,[2] is presently incarcerated in David Wade Correctional Center in Homer, Louisiana. Petitioner was convicted by a jury in the Twenty-Fourth Judicial District Court, Jefferson Parish, Case No. 02-6646, on April 24, 2003, of one count of distribution of cocaine, a violation of La. R.S. 40:967(A).[3] On May 13, 2003, Addison was sentenced to serve ten years of imprisonment at hard labor, with the first two years to be served without benefit of parole, probation, or suspension of sentence. On June 12, 2003, the State filed a habitual offender bill, claiming Addison was a third felony offender. Addison eventually stipulated to the multiple bill. On October 8, 2003, the court vacated the original sentence and sentenced Addison to imprisonment at hard labor for twenty years without benefit of probation or suspension of sentence.

Petitioner appealed his conviction and sentence to the Louisiana Court of Appeal, Fifth Circuit, which affirmed the conviction and sentence on March 30, 2004.[4]

---

[2]Although the instant petition was filed naming "Quindale Addison" as the petitioner, Addison has filed pleadings with the court listing his name as "Quindele Addison."

[3]During the second day of trial, the judge held Addison in contempt of court, ordered him to serve six months in the parish prison, and directed that he be removed from the courtroom. The trial proceeded in Addison's absence.

[4]**State v. Addison,** 871 So.2d 536 (La. App. 5th Cir. 2004). The Fifth Circuit held: (1) the trial court did not deny Addison his confrontation right by removing him from the courtroom during his trial; (2) while the agent's viewing of videotape of the drug transfer prior to viewing the photographic lineup was suggestive, there was no substantial likelihood of misidentification; and, (3) the evidence was sufficient to support the conviction.

Petitioner applied for a writ of certiorari and/or review in the Louisiana Supreme Court. The writ application was denied on October 29, 2004.[5]  On April 21, 2005, petitioner filed a uniform application for post-conviction relief (PCR) in the state district court.[6]  The district court denied the application for PCR on May 12, 2005.[7]  Petitioner's application for supervisory writs was denied by the Louisiana Court of Appeal, Fifth Circuit on August 3, 2005.[8]  According to the Clerk of the Louisiana Supreme Court, in a letter dated January 13, 2006, petitioner's application was metered on August 26, 2005, and was received and filed on January 13, 2006.[9]  A copy of petitioner's brief in support of his application to the Louisiana Supreme Court is contained in the State Record, Volume 5, Docket No. 06KH108.

---

[5]**State v. Addison,** 885 So. 2nd 584 (La. 10/29/04). (Addison's claims were that it was error to remove him from his trial and insufficient evidence. See State Record, Vol. 5, for a copy of his brief; No. 04-KO-1291, at page 4.)

[6]See State Record, Vol. 2, for a copy of the application for PCR.

[7]See State Record, Vol. 2, for a copy of the Order. The trial court addressed Addison's seven issues: (1) Addison's attorney provided ineffective assistance of counsel; (2) the trial court erred by denying the defendant's Motion to Suppress Evidence; (3) the District Attorney's office and the Jefferson Parish Sheriff's office withheld evidence favorable to the defendant; (4) the trial court erred by denying defendant his constitutional right to be present at the trial; (5) the magistrate court erred by not allowing a preliminary examination hearing at that level in violation of the Constitution of 1974 and the U.S. Constitution; (6) the trial court violated the defendant's constitutional right to counsel; and, (7) the trial court erred by allowing the District Attorney to submit evidence before the trial which was hearsay evidence.

[8]See State Record, Vol. 2, for a copy of the ruling. **Quindale Addison v. State of Louisiana,** No. 05-KH-764 (La. App. 5th Cir. Aug. 3, 2005). The Fifth Circuit said: On the presentation, the application discloses no error in the trial court's ruling of May 12, 2005, on relator's application for post conviction relief. Accordingly, this writ is denied.

[9]See State Record, Vol. 2, for copy of Clerk's letter.

Petitioner brought only one assignment of error as follows: The trial court wrongfully found that the petitioner was not denied his Sixth Amendment right to effective assistance of counsel. Petitioner's application for Supervisory Writs to the Supreme Court of Louisiana was denied on June 23, 2006.[10]

On or about October 16, 2006, petitioner timely filed a petition for federal habeas corpus relief with this Court.[11]  As previously mentioned, petitioner now brings three claims, as follows:

(1) Petitioner was deprived of his right to a fair trial by being removed from his trial.

(2) The evidence was insufficient to support the conviction.

(3) Constructive denial/ineffective assistance of counsel.

Study and review of the petitioner's memorandum shows that the above three claims were the only claims briefed.

The respondent filed a response on January 20, 2007, wherein it was stated that the petitioner had exhausted his three claims.  Review of the record shows that petitioner has exhausted his state court remedies pursuant to **Rose v. Lundy,** 455 U.S. 509, 102 S.Ct. 1198 (1982).  Respondent concedes that petitioner's federal application was timely filed.[12]

---

[10]See State Record, Vol. 2, for a copy of the ruling.  **State ex rel. Quindale Addison v. State of Louisiana,** No. 2006-KH-0108 (La. June 23, 2006).

[11]Fed. Record, Doc. No. 1, Petition.

[12]Fed. Record, Doc. No. 9, Response to Habeas Petition, page 3.

Accordingly, the court shall address the merits of petitioner's three claims, following review of the pertinent facts and applicable standard of review.

### <u>Statement of Facts</u>[13]

Jefferson Parish Sheriff's Office narcotics agent Wally Davis testified that on October 16, 2002, he was case agent on an investigation of complaints about drug activity in the Friedrichs Street area on the West Bank of Jefferson Parish. He sent undercover agent Alan James to make drug buys in the neighborhood. Davis was part of the cover team for Agent James, who drove an unmarked vehicle equipped with audio and video equipment to record the transactions.

Davis identified State's Exhibit 2 at trial as the rock of cocaine pertaining to this case. He testified that the cocaine inside the bag bore the same item number as the currency used to purchase the drugs and the videotape of the transaction. On cross-examination, Davis testified that the rock of cocaine was wrapped in a small plastic bag when it was purchased, and that he took the rock of cocaine out of the bag, cut a little piece off of it, field-tested it, put it in a bag, logged it into evidence, and sent it to the lab for additional testing.

Agent Davis identified State's Exhibit 3 as a photocopy of the currency the officers gave James to purchase narcotics that day. He said officers did not recover money on the same date because the arrest was not made that day.

---

[13]The facts were taken from the opinion issued in **State v. Addison,** 871 So.2d 536, 539-540 (La. App. 5th Cir. 2004) after review of the state record for accuracy.

Davis identified State's Exhibit 4 as the videotape of the transaction and said that when he first viewed the videotape he did not know the identity of the individual who distributed narcotics. Approximately one week later, officers interviewed some people in the neighborhood, who gave them a name that fit the description of the person they were seeking. Based on information Davis received, he compiled a photographic lineup on October 23, identified as State's Exhibit 5.

Davis acknowledged that at earlier proceedings he had testified that he saw defendant at the time and that defendant was the same person whose photograph was placed in the photographic lineup as number 5. Davis said he showed the photographic lineup to Agent James on October 23 and James immediately picked out photograph number 5 without hesitation.

Davis testified that James viewed the videotape on October 16, the day of the transaction, and that Agent James could have seen the videotape on October 23 when he showed James the photographic lineup. After the identification, they obtained a warrant for defendant's arrest.

Jefferson Parish Sheriff's Office undercover narcotics agent Alan James testified that on October 16, 2002 at 3:24 p.m., he purchased drugs from an individual later identified as Quindale Addison. The jury viewed a videotape of the transaction. During the playing of

the videotape, which had no audio track, the prosecutor questioned Agent James regarding the tape's contents.

James identified himself as the driver of the vehicle shown on the tape, which was made on a video camera hidden in the vehicle. He explained that he drove through the neighborhood in the area of Friedrichs, Nel and Ruby streets on the Jefferson Parish West Bank. As he drove, he attempted to attract attention of residents by holding up one finger to indicate he wanted to buy one rock of crack cocaine. When he saw defendant, James asked him for a "twenty," which meant he wanted to buy $20.00 worth of crack cocaine.

Defendant then asked him to step out of the truck. James thought it was because defendant suspected he was the police and had cameras in the car. James said defendant then looked in his vehicle for cameras. According to James, defendant told him that if he was the police, he was going to kill him. Defendant then left the vehicle to get the crack cocaine, came back and gave James an off-white rock-like object. James gave defendant the money as soon as defendant gave him the drugs. Defendant told James instead of coming back the next time he wanted to buy drugs, to call him on his cell phone. At that point the videotape ended.

James testified he had an opportunity to get a good look at defendant's face and he looked at him for approximately five to seven minutes. He identified State's Exhibits 9 and 10 as still photographs taken from the videotape and testified that defendant was the individual from whom he purchased the cocaine. James identified State's Exhibit 5 as the

photographic lineup he was shown on October 23. He said he picked out photograph number 5 as the individual who sold him the drugs on October 16.

James also stated that he had seen defendant when he testified previously in this case and that defendant was the individual who sold him the drugs on October 16. James testified he viewed the videotape on the day of the transaction, October 16, and again prior to viewing the photographic lineup on October 23. He explained he identified defendant from the photographic lineup because defendant was the individual who sold him the cocaine, and not because he had seen defendant in the videotape.

James identified State's Exhibit 2 at trial as the drugs defendant sold to him. He testified they bore the same item number "as this entire case." He testified he did not believe the rock of cocaine was wrapped when he purchased it. He said he put the rock of cocaine inside the evidence bag, but he did not put the rock of cocaine inside the other little plastic wrapping. He opined that the crime lab wrapped the cocaine in the other plastic wrapping because "[i]t's got the same initials." James explained that after he purchased the rock, he put it inside the evidence bag and sealed it.

The State and the defense stipulated to State's Exhibit 1, the lab report, which showed that Andrea K. Travis tested the rock-like object in connection with this case and that it tested positive for cocaine. They also stipulated that State's Exhibit 2 was the rock of crack cocaine that was tested.

The defense rested without calling any witnesses.

At the conclusion of the trial, the jury found defendant guilty as charged.

## **Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a comprehensive overhaul of federal habeas corpus legislation, including Title 28, United States Code, Section 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under Section 2254(d)(2). **Hill v. Johnson,** 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." Title 28, United States Code, Section 2254(d)(1). The United States Supreme Court has noted:

> Section 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the

state court's application of clearly established federal law is objectively unreasonable, and we stressed in **Williams [v. Taylor,** 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

**Bell v. Cone,** 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Title 28, United States Code, Section 2254(d)(2); see also **Hill**, 210 F.3d at 485; Title 28, United States Code, Section 2254(e)(1).

### Denial of Right to a Fair Trial

Petitioner claims that his right to a fair trial was violated when the trial court ordered him removed from the courtroom during his trial. The right to a fair trial is provided for in the Confrontation Clause of the Sixth Amendment to the U.S. Constitution, and made applicable to the States via the Fourteenth Amendment. This claim was addressed on direct appeal by the Louisiana Court of Appeal, Fifth Circuit in **State v. Addison,** 871 So.2d 536, 546-547. Specifically, the Louisiana Fifth Circuit cited **Pointer v. Texas,** 380 U.S. 400, 406, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923 (1965) in support of an accused's right to be confronted with witnesses against him and an accused's right to cross-examine the witnesses.

Additionally, the Louisiana Fifth Circuit relied upon the U.S. Supreme Court precedent of **Illinois v. Allen,** 397 U.S. 337, 338, 95 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970)

in determining that the right of confrontation is not absolute. The Louisiana Court of Appeal, Fifth Circuit noted:

> [A] defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom.

> **Allen,** 397 U.S. at 343, 90 S.Ct. at 1060-1061.

The Louisiana Court of Appeal, Fifth Circuit reasoned:

> In **Allen,** the Supreme Court recognized that "dignity, order, and decorum" in the courtroom are "essential to the proper administration of criminal justice" and that "flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated." **Id.**

> We believe trial judges confronted with disruptive, contumacious, stubbornly defiant defendants must be given sufficient discretion to meet the circumstances of each case. No one formula for maintaining the appropriate courtroom atmosphere will be best in all situations. We think there are at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant like Allen: (1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly.

> **Allen,** 397 U.S. at 343-344, 90 S.Ct. at 1061.

*See* **State v. Addison,** 871 So.2d at 547.

After considering U.S. Supreme Court and Louisiana Supreme Court precedent, the Louisiana Court of Appeal, Fifth Circuit reviewed the state trial record relative to the extent of petitioner's disruptive conduct.

The Louisiana Court of Appeal, Fifth Circuit said:

In the instant case, the record indicates that defendant's conduct was disruptive to the proceedings. Defendant continued to argue with the trial judge regarding hiring private counsel, even though the trial judge had already ruled on the matter. After a recess, the trial judge was advised by defense counsel that defendant used profanity in the courtroom. Defendant failed to stand up numerous times after being instructed by the trial judge. The trial judge told defendant that he would be allowed to be present at the proceedings as long as he conducted himself properly. The following day, the trial judge was advised by defense counsel that defendant was being verbally abusive and had threatened her, and that she was frightened by his behavior and afraid that something might happen**.3**

In light of the foregoing, we find that the trial court did not abuse its discretion in removing defendant from the courtroom.

Defendant also argued that the trial court erred by failing to conduct a hearing regarding his counsel's allegations. We find no merit to that argument, either. As discussed above, the trial judge considered the possibility of a hearing to ask defendant what had taken place between him and his counsel, but the judge rejected that option because he viewed the threat of physical force as a criminal violation, so that defendant's constitutional rights were involved (e.g., right against self-incrimination). Moreover, the trial judge personally observed defendant's disruptive behavior.

**3.**  The record also establishes that defendant engaged in disruptive and/or inappropriate behavior in prior court appearances in this case.  For example, during a February 26, 2003 hearing on a motion to suppress evidence, the trial judge told defendant to sit back in his chair.  The trial judge stated that he had observed defendant interacting with some people in the audience.  He admonished defendant not to allow that to happen again.  He told defendant that he had a right to be there only as long as he followed the court's instructions.  Later during the same hearing, the trial judge again admonished defendant to sit up in his chair.

**State v. Addison,** 871 So.2d 547-548.

This court finds that Louisiana courts' application of the above cited U.S. Supreme Court cases to the facts of the subject case does not represent an unreasonable application of Supreme Court law to the pertinent facts.  *See* **Hill v. Johnson,** 210 F.3d 481, 485 (5th Cir. 2000).  Accordingly, the instant claim is without merit.

### Insufficient Evidence

Petitioner claims that the evidence adduced during his trial was constitutionally insufficient to sustain his conviction for distribution of crack cocaine.  Specifically, petitioner claims that the evidence regarding his identification as the perpetrator and relative to the chain of custody of the cocaine was insufficient.  Petitioner argues that the testimonies of narcotics agents Wally Davis and Alan James were contradictory relative to two significant facts necessary for conviction: (1) how the rock of cocaine was received and, (2) when the video tape was viewed by Agent James.

The Statement of Facts section of this Report, pages 6-10, is hereby incorporated as though it was fully printed here.

The following passages of petitioner's memorandum brief reflect the essence of his claims.

14

Agent Davis testified that he was the case agent, and he supplied Agent James with the money used to make the buy, took the cocaine rock and videotape into evidence, and assembled the photographic line-up shown to Agent James a week after the buy. He did not see the transaction take place and no fingerprints were made of (sic) taken from the small plastic bag containing the rock. He said that after field testing the rock, he placed it in evidence the way it was given to him. The rock he received was in a large evidence bag. He also stated that Agent James did not see the videotape of the drug transaction before he made the photographic identification.

Agent James, the undercover agent, was the only one who could make the identification. He testified that he got a good look at the dealer's face, having from five (5) to seven (7) minutes to view his face. He identified the petitioner from photographs taken from the videotape and the line-up. Unlike the suppression hearing, he revealed that he saw the videotape **immediately before** he looked at the line-up. He also said that rock was not wrapped in plastic when he purchased it, and he assumed that the crime lab had put the plastic around it.

Given the circumstances of this contradictory testimony, petitioner maintains that the evidence was insufficient to support the conviction beyond a reasonable doubt. This assertion is based upon a claim of a suggestive and tainted identification, plus an inability to

show that a proper chain of custody was established in this case. See Federal Rec. Doc. #1, Petition and attached Memorandum Brief, page 9.

When conducting a post-AEDPA sufficiency of the evidence review, a federal court may grant relief only if it determines that the state court decision rested on an "unreasonable application" of clearly established Federal Law, as determined by the Supreme Court, to the facts of the case. See Title 28, United States Code, Section 2254(d)(1).

The Louisiana Court of Appeal, Fifth Circuit addressed the petitioner's issue of insufficiency of evidence. In its analysis of the claim, the Louisiana Court of Appeal, Fifth Circuit first set forth the applicable Supreme Court law along with the corresponding state law stating:

> The constitutional standard enunciated in **Jackson v. Virginia,** 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing all of the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. *See* **State v. Bishop,** 01-2548, P.4 (La.1/14/03), 835 So.2d 434, 437.

**State v. Addison,** 871 So.2d 536, 548-549.

The state appellate court next examined the definition of the crime at issue and specified the ramifications of the issues, as follows:

> Defendant was convicted of violating La. R.S. 40:967(A), distribution of cocaine. Pursuant to that statute, the State was required to prove that defendant knowingly or intentionally distributed cocaine. *See* **State v. Raines,** 00-1941, p. 7 (La.App

16

5 Cir. 5/30/01), 788 So.2d 635, 640, *writ denied*, 01-1906 (La.5/10/02), 815 So.2d 833.

> On appeal, defendant only challenges the identification procedure and the sufficiency of the evidence with respect to the agents' contradictory testimony regarding the viewing of the videotape and the packaging of the cocaine.

**State v. Addison,** 871 So.2d at 549.

Thereafter, the Louisiana Court of Appeal, Fifth Circuit evaluated the basis of petitioner's argument, along with the evidence adduced at trial supporting petitioner's conviction for distribution of cocaine. The court addressed petitioner's argument that Agent James' identification of petitioner was unduly suggestive and tainted because Agent James viewed videotape of the transaction prior to looking at the photographic line-up.

The Louisiana Court of Appeal, Fifth Circuit, compared the testimony that Agent James gave at the motion to suppress identification hearing with that given at trial as follows, in pertinent part:

> At the suppression hearing, Agent James testified that on October 16, 2002 he purchased a rock of crack cocaine from defendant, whom he positively identified in court. Agent James further testified that on October 23, 2002 Agent Davis showed him a photographic lineup that he identified as State's Exhibit 1. Agent James explained that Agent Davis did not force him to pick out anyone, coerce him, or promise him anything of value. Agent James picked out defendant's photograph, number 5, as the subject who sold him the crack cocaine on October 16, 2002. He testified that he had never seen defendant prior to that date.

Agent James acknowledged that he viewed defendant's face approximately two or three minutes when he purchased the cocaine. He testified at the suppression hearing that he looked at the photographic lineup before he looked at the videotape (of the transaction). After hearing the testimony, the trial judge denied the motion, stating that there was no constitutional violation in the manner by which the photographic identification took place.

Agent James testified at trial, and his testimony was very similar to his testimony at the suppression hearing with two exceptions. First, Agent James testified at trial that he looked at defendant's face for approximately five to seven minutes. In contrast, at the suppression hearing he testified that he looked at defendant's face for approximately two or three minutes when he purchased the cocaine.

Secondly, Agent James testified at trial that he viewed the videotape of the transaction on October 16, the day of the transaction, and on October 23, prior to viewing the photographic lineup. However, at the suppression hearing he testified that he looked at the photographic lineup before he looked at the videotape. He testified at trial that he identified defendant from the photographic lineup because defendant was the individual who sold him the cocaine, and not because he had seen defendant in the videotape.

**State v. Addison,** 871 So.2d at 549.

The Louisiana Court of Appeal, Fifth Circuit next compared the testimony of

Agent Davis, as follows:

Agent Davis testified at trial that he did not believe Agent James viewed the videotape on October 23 when he showed him the photographic lineup, but that he could have done so.

**State v. Addison,** 871 So.2d at 550.

In its analysis of petitioner's claim that the identification procedure was suggestive and resulted in a substantial likelihood of misidentification of petitioner as a perpetrator, the Louisiana Court of Appeal, Fifth Circuit set forth the applicable Supreme Court law, stating:

> Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony. **Manson v. Brathwaite,** 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). The factors to be considered in assessing reliability were set out in **Neil v. Biggers,** 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), and approved in **Manson v. Brathwaite, supra.** They include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and, (5) the time between the crime and the confrontation.

**State v. Addison,** 871 So.2d at 550.

The court next evaluated the subjective identification procedure in light of the above mentioned factors thereby stating:

> Here, Agent James testified at trial that he identified defendant from the photographic lineup because defendant was the individual who sold him the cocaine, and not because he had seen defendant in the videotape. The transaction occurred during daylight hours, as was evidenced by the videotape and by Agent James' testimony that the transaction occurred at 3:24 p.m.; the officer was in close proximity to defendant and had a clear view of him, which was also evidenced by the videotape; the time between the transaction and the identification was relatively short (one week); the sale was recorded on videotape, which was played for the jury at trial; and defense counsel was given an

opportunity to cross-examine Agent James in an effort to discredit his identification.

Given these circumstances, after reviewing the factors set forth in **Manson v. Brathwaite, supra,** as well as the totality of the circumstances, we find there was not a substantial likelihood of misidentification and, thus, the trial court did not err in denying defendant's motion to suppress. (citations omitted).

**State v. Addison,** 871 So.2d at 550.

This court finds that the above does not represent an unreasonable application of Supreme Court law to the pertinent facts. See **Hill v. Johnson,** 210 F.3d 481, 485 (5th Cir. 2000). This claim is meritless.

We now turn to petitioner's challenge to the chain of custody of the cocaine. Petitioner claims that the evidence was insufficient to show that the cocaine (State Exhibit 2) which was introduced at trial, was the same cocaine he allegedly sold to Agent James, because of Agents Davis' and James' contradictory testimonies regarding the packaging of the cocaine. The petitioner failed to object to the introduction of the cocaine into evidence. The Louisiana Court of Appeal, Fifth Circuit addressed the chain of custody issue and concluded:

A continuous chain of custody is not essential to enable the State to introduce physical evidence as long as the evidence as a whole establishes that it is more probable than not that the object introduced was the same as the object originally seized. . . . Once a proper foundation has been laid with regard to a piece of evidence, a lack of positive identification or a defect in the chain of custody goes to the weight of the evidence rather than to admissibility. . . . Ultimately, a chain of custody or connexity of

the physical evidence is a factual matter for determination by the jury. [Citations omitted.]

**State v. Joseph,** 96-187, p. 9 (La. App. 5 Cir. 11/14/96), 685 So.2d 237, 243 *writ granted in part on other grounds, denied in part, and remanded for resentencing,* 96-2998 (La.5/9/97), 693 So.2d 782.

Even assuming defense counsel had objected to the admissibility of the evidence, we find the State established it was more probable than not that the rock of cocaine identified by both agents and introduced into evidence is the one connected with the case. **State v. Joseph, supra.** Although there was some discrepancy as to whether the rock of cocaine was wrapped in plastic when it was purchased, the jury could have reasonably found that one of the agents was mistaken regarding the packaging of the cocaine when it was purchased.

**State v. Addison,** 871 So. at 551.

It appears that the introduction of the cocaine involved a state evidentiary matter which was not objected to.

Violations of state law and procedure which do not infringe specific federal constitutional rights are generally not cognizable in habeas corpus. Federal habeas relief is not available for alleged errors in the interpretation or application of state law. **Estelle v. McGuire,** 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). It is well established that federal habeas review is limited to questions of constitutional dimension. *See generally* **Jernigan v. Collins,** 980 F.2d 292, 298 (5th Cir. 1992), <u>cert. denied,</u> 508 U.S. 978, 113 S.Ct. 2977, 125 L.Ed.2d 675 (1993); **Castillo v. Johnson,** 141 F.3d 218, 222 and 224 (5th Cir.), <u>cert. denied,</u> 524 U.S. 979, 119 S.Ct. 28, 141 L.Ed.2d 788 (1998). To qualify for federal

habeas relief, an error of state law must be "sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment." **Pully v. Harris,** 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). I find no denial of equal protection or of due process in this case. This claim lacks merit.

### Ineffective Assistance of Counsel

Petitioner claims that his trial attorney provided ineffective assistance of counsel which violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution. Specifically, petitioner claims that his counsel failed to conduct a pretrial investigation, failed to subject the prosecution's case to meaningful adversary testing and failed to create or make a plausible line of defense.

The seminal case for adjudicating a habeas petitioner's ineffective assistance of counsel claim is **Strickland v. Washington,** 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984), which places on petitioner the burden of demonstrating not only that his counsel's performance was deficient, but also that he was prejudiced as a result of counsel's deficient performance. If a court finds that a petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong. **Id.** Under the deficient performance prong of the **Strickland** test," ... it is necessary to 'judge...counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" **Lockhart v. Fretwell,** 506 U.S. 364, 371, 113 S.Ct.

838, 844, 122 L.Ed.2d 180 (1993), quoting **Strickland,** 466 U.S. at 690, 104 S.Ct. at 2066.

"An attorney's performance, which enjoys a strong presumption of adequacy, is deficient if it is objectively unreasonable." **United States v. Walker,** 68 F.3d 931, 934 (5th Cir. 1995), cert. denied, 516 U.S. 1165, 116 S.Ct. 1056, 134 L.Ed.2d 201 (1996), quoting **United States v. Acklen,** 47 F.3d 739, 742 (5th Cir. 1995), cert. denied, 519 U.S. 1142, 117 S.Ct. 1017, 136 L.Ed.2d 893 (1997). To prove prejudice under the **Strickland** standard, a petitioner "...must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." **Strickland,** 466 U.S. at 694, 104 S.Ct. 2068.

Petitioner claims that his attorney was ineffective because she failed to conduct a pretrial investigation. Specifically, petitioner claims that his attorney "never investigated anything at any time before or during the proceedings or the outcome would have been very different."[14] Review of the record does not support petitioner's claim. Petitioner's attorney did in fact file a number of pretrial motions such as: Omnibus Motion and Order for Pretrial Motions which included: A Motion to Suppress Confession, Identification and Physical Evidence; Motion for Bill of Particulars, Discovery and Inspection and Production of Documents; Motion for Production of Initial Police Report, Mug Shot of Defendant, Rap Sheet of Defendant, Arrest Report of Defendant, Motion for Reasonable Notice of Trial Date;

---

[14]Fed. Record, Doc. No. 1, Petition, Attached Memorandum, page 16.

and, Motion and Order for Subpoena Duces Tecum for Dispatch and All Other Communication.[15]

---

[15]See State Record, Vol. 3, pages 19-48 for copies of motions.  Also see State Record, Vol. 2, for a copy of the district court's May 12, 2005, Order denying petitioner's ineffective assistance of counsel claims on Application for Post-Conviction Relief.  The court applied the test as established in **Strickland v. Washington,** 466 U.S. 668 (1984) as follows, in pertinent part:

In defendant's first assignment of error, he alleges he was denied effective assistance of counsel.  The defendant avers that the record is absent any pre-trial investigation by defense counsel regarding any of the submitted police report(s) and videotape.  The defendant claims his counsel failed to investigate the actions of the crime lab clerk regarding the rock-like substances.  Lastly, he alleges defense counsel failed to inform the jurors that the "so called evidence" submitted to the Court was not the same evidence in the videotape.

The Supreme Court of the United States established the standards for the claim of ineffective assistance of counsel in **Strickland v. Washington,** 466 U.S. 668 (1984).  The test established by the Supreme Court provides that in order for a claim of ineffective assistance of counsel to prevail, the petitioner must show the counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment and that the deficient performance prejudiced the defense in that the errors were so serious as to deprive petitioner of a fair trial.  Furthermore, the Court in **Strickland,** established that the performance inquiry into a counsel's effectiveness must be that his assistance was "reasonable considering all the circumstances." **Id.** At 689.  The Court went on to emphasize the "countless" ways to provide effective assistance and also cautioned a counsel's action being challenged that might be considered "sound trial strategy." **Id.**

In the instant case, none of the defendant's claims seem to go beyond strategic choices made by his counsel at the time of the defendant's trial.  The defendant's claims are essentially with his counsel's decisions regarding evidence and witnesses used at trial.  An examination of the record reveals that defense counsel filed several pre-trial motions; including but not limited to a Motion for Bill of Particulars; Discovery and Inspection and Production of Documents.  The record also shows that defense counsel filed a witness list for any and all motion and trial dates in this matter.  Moreover, defense counsel also filed a Motion and Order for Subpoena Duces Tecum for Dispatch and All Other Communications which requested the Sheriff's Office to preserve and produce to defense counsel any and all telephone tapes and radio tapes; and all transcripts from the item number associated with this case.  Defense counsel also prepared and argued at the Motion to Suppress Evidence Hearing on February 26, 2003.  Lastly, defense counsel was able to review the videotape and cross examine the State's witnesses regarding same.  These are considered trial tactics for purposes of evaluating the performance of

Petitioner claims that his attorney was ineffective because she failed to subject the prosecution's case to meaningful adversarial testing. Particularly, petitioner argues that if the facts of how Agent James had viewed the videotape before making the identification of petitioner were known, the trial would have resulted in a post verdict judgment of acquittal, or a not guilty verdict."[16] Additionally, petitioner claims that his attorney failed to object to the introduction of the "cocaine rock" on the grounds that the evidence was insufficient to establish that the cocaine the prosecution claimed petitioner sold to Agent James was the same cocaine rock as put into evidence. Review of the trial transcript does not support petitioner's claims as his attorney effectively cross-examined Agent James as follows, in pertinent part:

**BY MS. WIGGINS:**

> **Q.** Officer James, State Exhibit 2, you previously said that was the photocopy of the twenty dollar bill that you exchanged for the rock?
>
> **A.** Correct
>
> **Q.** Now, there isn't any special markings on this twenty dollar bill in order for you to be able to identify it today, is there?
>
> **A.** I put it with the exact tape and then once I get the item number, I put it on the money.

---

defendant's counsel. Thus, defendant's claim must fail because his counsel's action at trial was considered trial tactics and under **Strickland** the defendant has failed to meet the two-prong test.

[16]Fed. Record, Doc. No. 1, Petition, attached memorandum page 16.

**Q.**   Now, you had surveillance tape in the vehicle.  When was the first time you saw that surveillance tape?

**A.**   I saw it the day of.

**Q.**   And after the 16th Day of October, 2002, how many more times did you review that video?

**A.**   I didn't see it again until the 23rd of October.

**Q.**   And on the 23rd, did you see it prior to the photo lineup or after the photo lineup?

**A.**   Prior.

**Q.**   Now, the State also showed you what they have marked -- I'm sorry.  Earlier, I showed you the money, which is State Exhibit 3.  State Exhibit 2 -- may I approach, Your Honor?

**THE COURT:**

Yes, Ma'am.

**BY MS. WIGGINS:**

**Q.**   State Exhibit 2, which is the rock that you said you had purchased, was it wrapped when you purchased that rock?

**A.**   I don't believe so.

**Q.**   You purchased that around 3:24 in the evening.  Correct?

**A.**   Yes, ma'am.

**Q.**   Now, you didn't put it in a plastic – in an evidence bag that it's in now, did you?

**A.**   Put it in the plastic bag here?

**Q.**     Correct.

**A.**     Yes, I did.

**Q.**     Now, I notice inside that evidence bag that rock is wrapped in, something is wrapped around the rock. Did you put it in that other little plastic?

**A.**     No, I did not.

**Q.**     And you don't know who put it in that other little plastic wrapping?

**A.**     I would say the crime lab. It's got the same initials.

**Q.**     I'm sorry. The crime – who?

**A.**     The crime lab. It's got the same initials.

**Q.**     So, after you purchased the rock, what did you do with it?

**A.**     I got back to the office and put it in this bag, sealed it up in this bag.

**Q.**     You went back to the office and sealed it in the evidence bag?

**A.**     Yes, I did.

**MS. WIGGINS:**

I have no further questions.[17]

After considering the above cross-examination, it is evident that an objection to the

introduction of the rock of cocaine would have been frivolous as was the filing of a motion

---

[17]See State Record, Vol. 4 of 5, Transcript of trial, pages 233-234.

for post verdict judgment of acquittal. The evidence of petitioner's guilt was sufficient to convict him. (See the Insufficient Evidence section of this report, pages 14-22.) Petitioner's claims are without merit.

Finally, petitioner claims that his attorney was ineffective because she failed to "create or make a plausible line of defense for petitioner." Specifically, petitioner claims that he "was not the one that distributed the cocaine rock to Agent James at any time."[18] Review of the record shows that petitioner's attorney presented the very defense that he now complains of not receiving. Study of the record indicates that a motion for discovery and a motion to suppress evidence and identification were filed. Moreover, counsel effectively cross examined the State's witnesses. The failure to object to the introduction of the cocaine into evidence was not error as the defense was that someone else committed the crime. The defense amounted to sound trial strategy. Petitioner's claim is meritless.

Accordingly;

**RECOMMENDATION**

It is hereby **RECOMMENDED** that the application for federal habeas corpus relief filed on behalf of petitioner, Quindale Addison, be **DENIED WITH PREJUDICE.**

---

[18]Fed. Record, Doc. No. 1, Petition, attached memorandum page 17.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.   Title 28, United States Code, Section 636(b)(1); **Douglass v. United Services Auto. Ass'n**, 79 F. 3d 1415, 1430 (5th Cir. 1996)(en banc).[19]

New Orleans, Louisiana, this 26th  day of July, 2010.

LOUIS MOORE, JR.
United States Magistrate Judge

---

[19]**Douglass** referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, Title 28, United States Code, Section 636(b)(1) was amended to extend to fourteen days.